UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIO NOYOLA,<br><br>               Plaintiff,<br><br>v.<br><br>LT. KERRI ADLER and SGT. SCOTT PONOZZO,<br><br>               Defendants. | NO: CV-12-196-RMP<br><br>ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Before the Court are the Defendants' motion for waiver, ECF No. 61, motion to strike, ECF No. 68, motion for summary judgment, ECF No. 70, and motion for leave, ECF No. 83. Also before the Court is Plaintiff's motion to continue, ECF No. 78. The Court has reviewed all of the motions, their relevant memoranda, all declarations, the court's previous orders, all other relevant filings, and is fully informed.

**BACKGROUND**

Defendant Mario Noyola is a prisoner at the Airway Heights Correction Center. ECF No. 41. Prior to being moved to Airway Heights, Mr. Noyola was a

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

resident of, among other places, the Grant County Jail.  Mr. Noyola began his tenure at the Grant County Jail as a pretrial detainee on March 24, 2010, facing charges of rape in the first degree, incest in the first degree, and assault in the second degree.  ECF No. 71 at 65.  On February 9, 2012, a jury found Mr. Noyola guilty of custodial assault, intimidating a public servant, and assault in the third degree.  ECF No. 71 at 16.  On February 14, 2012, Mr. Noyola pleaded guilty to assault in the first degree and domestic violence.  ECF No. 71 at 48.  Mr. Noyola was transferred from Grant County Jail on February 28, 2012.  ECF No. 71 at 2.

On February 6, 2011, Mr. Noyola allegedly intentionally flooded his cell.  ECF No. 71 at 3, 79.  As a result, Mr. Noyola's visitation privileges were suspended.  ECF No. 71 at 79-80.  The notice informing Mr. Noyola of his violation and the suspension of his visitation privileges also informed Mr. Noyola that he had the right to a review hearing upon written request.  ECF No. 71 at 79.  Mr. Noyola requested a hearing on February 7, 2011.  ECF No. 71 at 82.  A hearing was held on February 16, 2011.  ECF No. 71 at 82.  At the hearing, the reviewing officer, Defendant Sergeant Scott Ponozzo, found that Mr. Noyola committed the violations.  ECF No. 71 at 91-92.  Mr. Noyola appealed, and his appeal was denied.  ECF No. 71 at 94.

Mr. Noyola, acting pro se, initiated the present action on April 9, 2012.  In his initial complaint, Mr. Noyola alleged a violation of due process, a claim for

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

1  negligence, and that he was subject to cruel and unusual punishment. ECF No. 7.
2  The Defendants moved to dismiss. ECF No. 13. Mr. Noyola then moved for leave
3  to amend his complaint and filed his first amended complaint in which he re-
4  alleged his due process and negligence claims and added a claim for violation of
5  his Equal Protection rights. ECF No. 27. The Court granted the Defendants'
6  motion to dismiss and concluded that neither the original nor the first amended
7  complaints stated a cause of action. ECF No. 42. The Court granted leave for the
8  Plaintiff to file a second amended complaint. ECF No. 42.

9        The Defendant filed his second amended complaint on April 26, 2013. In
10 that complaint, the Defendant re-alleged claims for violation of his right to due
11 process and equal protection as well as an allegation of "deliberate indifference."
12 ECF No. 65. The Defendants have now moved, among other things, for summary
13 judgment. ECF No. 70. Mr. Noyola has moved for a continuance based on an
14 alleged need for discovery to oppose summary judgment. ECF No. 78. The Court
15 will address Mr. Noyola's motion first.

16                            **DISCUSSION**

17 **Motion to Continue**

18       Mr. Noyola has moved for a continuance, arguing that he requires discovery
19 in order to oppose the Defendants' motion for summary judgment. The Court
20 notes that the Defendants filed and mailed their motion on May 28, 2013. ECF

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

1  No. 70. By operation of the Local Rules, Mr. Noyola's response was due on June
2  27, 2013. LR 7.1(b)(2)(A). While Mr. Noyola gave notice that he was going to
3  move for a continuance on June 20, 2013, Mr. Noyola's motion was not mailed
4  until July 2, 2013, ECF No. 78-2, and was not filed until July 3, 2013, ECF No. 78.
5  In other words, Mr. Noyola did not file a timely response to the Defendants'
6  motion, and his motion seeking an extension of his response deadline came only
7  after the deadline for the response already had passed. On this basis alone, the
8  Court could deny Mr. Noyola's motion to continue. However, despite Mr.
9  Noyola's procedural failure, the Court will address his motion to continue on the
10 merits.
11    A party opposing a motion for summary judgment may move the Court for a
12 continuance in support of further discovery to oppose the motion. Fed. R. Civ. P.
13 56(d). However, the party seeking such a continuance "must identify by affidavit
14 the specific facts that further discovery would reveal, and explain why those facts
15 would preclude summary judgment." *Tatum v. City and Cnty. of San Fransisco*,
16 441 F.3d 1090, 1100 (9th Cir. 2006). The party seeking discovery must "proffer
17 sufficient facts to show that the evidence sought exists." *Nidds v. Schindler*
18 *Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996).
19    Mr. Noyola seeks evidence to support his contentions that (1) he did not
20 flood his cell or threaten an officer; (2) he did not receive twenty-four hours'

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

notice before his hearing; (3) Defendant Ponozzo was not properly trained to conduct hearings; (4) Mr. Noyola was not provided an opportunity to present evidence at the hearing; (5) Mr. Noyola was denied visitors; and (6) the Defendants knew they were violating Mr. Noyola's rights.  However, Mr. Noyola has failed to explain how these contentions would preclude summary judgment.

In fact, even if the Court were to accept all of Mr. Noyola's factual contentions as true, it would not preclude summary judgment in this case.  As to Mr. Noyola's claim for violation of due process, the Court ultimately finds that Mr. Noyola did not possess a liberty interest in visitation, which renders the quality and amount of process received by Mr. Noyola irrelevant.  Mr. Noyola's equal protection claim fails because he cannot establish that another inmate was similarly situated to him.  None of the evidence identified by Mr. Noyola in his affidavit would establish such comparator information.  Finally, there simply is no state-law cause of action for "deliberate indifference."  For these reasons, Mr. Noyola has failed to carry his burden under Rule 56(d) to show that discovery is warranted in this case and that a continuance is necessary.  Therefore, the Court denies Mr. Noyola's motion to continue and will proceed to dispose of the summary judgment motion.

/ /

/ /

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

**Motion for Summary Judgment**

*Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party.  *Dzung Chu v. Oracle Corp.* (*In re Oracle Corp. Secs. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  The evidence presented by both the moving and non-moving parties must be admissible.  Fed. R. Civ. P. 56(e).  The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### *Due Process Claim*

In reviewing whether a state or local government has violated a plaintiff's right to procedural due process, a district court takes two steps.  First, the court must determine "whether there exists a liberty or property interest which has been interfered with by the State." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972)).  Second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

In his amended complaint, Mr. Noyola alleges that he was deprived due process because his visitation privileges were suspended for thirty days.  Mr. Noyola alleges that he did not receive sufficient process because, among other

1 things, the hearing did not occur until after the deprivation and he did not receive

2 sufficient notice of the hearing.

3 As Mr. Noyola's due process claim is based on the revocation of his

4 visitation privileges, the Court must first determine whether Mr. Noyola's

5 visitation privileges are a liberty interest for the purposes of the Due Process

6 Clause. "Protected liberty interests 'may arise from two sources--the Due Process

7 Clause itself and the laws of the States.'" *Thompson*, 490 U.S. at 460 (quoting

8 *Hewitt*, 459 U.S. at 466). The Supreme Court has consistently held that the

9 Constitution does not guarantee a right to visitation for pretrial detainees. *Block v.*

10 *Rutherford*, 468 U.S. 576, 589 (1984) ("We hold only that the Constitution does

11 not require that detainees be allowed contact visits when responsible, experienced

12 administrators have determined, in their sound discretion, that such visits will

13 jeopardize the security of the facility."); *See also Kentuck Dept. of Corrections v.*

14 *Thompson*, 490 U.S. 454, 460 (1989) ("[N]or can it be seriously contended, in light

15 of our prior cases-that an inmate's interest in unfettered visitation is guaranteed

16 directly by the Due Process Clause.").

17 Accordingly, if Mr. Noyola has a liberty interest in visitation, it must come

18 from state law. A state may create a liberty interest through statutes, prison

19 regulations, and policies. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). In

20 February 2011, when Mr. Noyola allegedly flooded his cell and was punished, Mr.

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

Noyola was incarcerated as a pretrial detainee. Accordingly, for Mr. Noyola to show that state law created a liberty interest in visitation, Mr. Noyola must establish that state law sets forth a "substantial predicate" that governs official decision making and the language of that law must be explicitly mandatory. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002).

In his complaint, Mr. Noyola references "POL-1300" as imposing procedures that must be met before punishment can be meted out. ECF No. 65 at 4. POL-1300 is attached as Exhibit L to the Declaration of Sergeant Ponozzo. ECF No. 71 at 102-110. While POL-1300 does address the procedures for prisoner discipline, POL-1300 does not impose any "substantial predicates" that are explicitly mandated before visitation privileges may be suspended. For example, paragraph 20 of POL-1300 states that "[r]estriction of personal visiting privileges will normally only be denied or restricted as a sanction for infraction of rules related to visiting." ECF No. 71 at 105. While this language guides jail officials away from imposing visitation restrictions in some cases, nothing in this language restricts the discretion of Grant County Corrections officials to impose restrictions on visitation. Indeed, POL-1300 later states that "[n]othing in these policies or procedures shall be deemed to create a liberty interest that inhibits the Sheriff's Office and Corrections Division administration from utilizing reasonable and legitimate sanctions and restrictions of privileges . . . ." ECF No. 71 at 106.

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

In short, nothing in the regulations identified by Mr. Noyola contains the type of mandatory language that would restrict the Defendants' discretion to revoke visitation privileges.  Therefore, Mr. Noyola has no state-law based liberty interest in visitation.  Accordingly, Mr. Noyola's claim for violation of his due process rights fails, and the Court does not need to inquire as to the sufficiency of the post-deprivation hearing Mr. Noyola received.

*Equal Protection*

An equal protection claim may be established in two ways: (1) a plaintiff may show that he was discriminated against based on his membership in a protected or suspect class such as race, alienage, or religious affiliation; or (2) a plaintiff may establish that he was treated differently from similarly situated individuals for reasons that are not rationally related to a legitimate State purpose. *Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011).  Mr. Noyola has made no claim of discrimination based on a protected or suspect class. Accordingly, if Mr. Noyola is to succeed, it must be on a claim that he was treated differently than a similarly situated person for reasons not rationally related to a legitimate State purpose.

In his second amended complaint, the Plaintiff appears to assert two different theories of an equal protection violation.  First, he asserts that he was treated differently from the typical treatment received by inmates at Grant County

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

1  Jail. ECF No. 65 at 7-8. Second, he argues that the procedures at Grant County

2  Jail deviate from procedures used by other jails. ECF No. 65 at 9.

3  However, Mr. Noyola has failed to provide any evidence of a comparator

4  who was similarly situated to him either at Grant County Jail or some other

5  establishment. As noted above, Mr. Noyola's affidavit in support of his request for

6  a continuance fails to identify any such comparator evidence. Accordingly, Mr.

7  Noyola has failed to carry his burden to produce evidence creating an issue of

8  material fact that would preclude summary judgment on his equal protection claim.

9  *Deliberate Indifference*

10 Mr. Noyola also has asserted a claim for "deliberate indifference under [the]

11 law of Washington." ECF No. 65 at 10. The factual allegations asserted in the

12 complaint in support of the "deliberate indifference" claim allege that the

13 Defendants knew that they were violating Mr. Noyola's rights but proceeded to

14 violate his rights anyway. *See* ECF No. 65 at 7, 10. The Court is unaware of any

15 state-law claim for "deliberate indifference," and the factual assertions contained in

16 the complaint do not comprise any cause of action of which the Court is aware.

17 Therefore, Mr. Noyola's claim must be dismissed.

18 **CONCLUSION**

19 Mr. Noyola's claim for violation of due process fails because Mr. Noyola

20 has failed to identify a liberty interest of which he was deprived. Mr. Noyola's

ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

claim for equal protection fails because he has presented no evidence of a comparator with whom he is similarly situated. Finally, Mr. Noyola's claim for "deliberate indifference" fails because it is not an identifiable cause of action. For these reasons, the motion for summary judgment must be granted.

Accordingly, **IT IS HEREBY ORDERED:**

1. The Plaintiff's motion to continue, **ECF No. 78**, is **DENIED**.

2. The Defendants' motion for summary judgment, **ECF No. 70**, is **GRANTED**.

3. The above-captioned case is **DISMISSED WITH PREJUDICE** and without costs to either party.

4. **JUDGMENT** shall be entered for the Defendants.

5. All pending motions are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel and the Plaintiff, and **CLOSE** this file. The court certifies any appeal of this dismissal would not be taken in good faith.

**DATED** this 5th day of August 2013.

        *s/ Rosanna Malouf Peterson*
        ROSANNA MALOUF PETERSON
        Chief United States District Court Judge